PEOPLE *v.* WARD.

ARREST — INTOXICATING LIQUORS — REASONABLE GROUNDS FOR ARREST WITHOUT WARRANT.

Where defendant had for some time been suspected by the officers of illegally engaging in the liquor business, an anonymous telephone call from a neighboring city that he was on a certain car with a suit case full of whisky, was reasonable ground for suspicion that he was committing a felony and justified the officer in arresting him without a warrant when he refused to open the suit case for the officer's inspection. WIEST, FELLOWS, and BIRD, JJ., dissenting.

Exceptions before judgment from Ottawa; Cross

On liability of officer for making arrest without a warrant, see notes in 51 L. R. A. 203; 42 L. R. A. (N. S.) 71.

On transportation of concealed liquor as an offense within presence of officer authorizing arrest without a warrant, see note in 20 A. L. R. 652.

On question of constitutional guaranties against unreasonable searches and seizures, as applied to search for and seizure of intoxicating liquors, see notes in 3 A. L. R. 1514; 13 A. L. R. 1316; 27 A. L. R. 709.

(Orien S.), J.   Submitted October 11, 1923.   (Docket No. 121.)   Decided February 1, 1924.

Harry Ward was convicted of violating the liquor law.   Affirmed.

*Daniel F. Pagelsen,* for appellant.

*Fred F. Miles,* Prosecuting Attorney, for the people.

BIRD, J. (*dissenting*).   Defendant was informed against and convicted for possessing and transporting intoxicating liquor in Ottawa county on December 23, 1922.   The defense most relied upon was that the arrest was made without probable cause, and a motion to dismiss was made for this reason.   Emil Klumpel, the police officer, who made the arrest, testified, on direct-examination, as follows:

"I was in police headquarters and we got a call saying that there was a call from Spring Lake that Harry Ward was coming on the car with a suit case full of whisky. * * * When I met him I says 'Just a minute,' and he turned around, he says, 'What is the matter,' and I says, 'Oh, not much.'   I says, 'Harry,' I says, 'If I ask you to open that suit case would you do it?'   He says, 'No.'   I took him by the shoulder.   I says, 'I will arrest you for a violation of the liquor law.'   He says, 'Where is your warrant?' I says, 'Don't need any, just come on along,' and I took him along and ran him up to police headquarters."

After they arrived at the police station the suit case was searched by the officer and intoxicating liquor was found therein.

On cross-examination the officer testified:

"I had no warrant for his arrest and no complaint had been made to me or by me before any justice of the peace before that.   I had no search warrant to search his grip. * * * I arrested him because I was positive he had the liquor with him.   I do not know who telephoned me from Spring Lake and I

did not know whether it was a joke or what it was. The party who gave me the information I did not know, and he did not say. He seemed to know what he was talking about. I did not ask who it was. I did not care who it was. If I had received that kind of information in regard to anybody else I would not have acted upon it. We had formed our suspicions of Harry Ward. I arrested him upon the mere idle statement I received over the telephone, together with the suspicion that this constituted the cause for placing him under arrest. I did not see Harry Ward get off the car. I thought he got off the car. I did not see him get off. I don't know whether he got off that street car or not. I am not positive."

The rule of probable cause has been stated, as follows:

"In cases in which an arrest without a warrant may be made by a police officer or private individual, of a person suspected of having committed a felony, the person making the arrest may act upon facts within his own knowledge, or on those communicated to him by a responsible person. He has no authority, however, to arrest on the mere belief that a person has been guilty of an offense, if such belief has no foundation in fact or sufficient circumstances on which to arrest, or if he unreasonably acts at the request of a third person, who himself has a mere suspicion of the guilt of the one who is arrested. To afford a justification there must be not only a real belief and reasonable grounds for it, but where there is an opportunity to make inquiry proper investigation as to the facts should be made, and an officer is not warranted in relying upon circumstances deemed by him suspicious, when the means are at hand of either verifying or dissipating those suspicions without risk, and he neglects to avail himself of those means." 2 R. C. L. p. 450.

And this court has held that mere suspicion alone is not sufficient to constitute probable cause. *People v. Burt,* 51 Mich. 199.

The officer who made the arrest concedes that the only information he had was the anonymous telephone

call which he received.   The informer did not tell the officer who he was, or what information he had, aside from the facts stated, nor whether his statement was based upon rumor, suspicion or knowledge, and the officer did not ask him who he was, and stated that he did not care who he was.   The information which the officer received from this anonymous informer does not appear to be supported by facts sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. *People* v. *Johnson*, 86 Mich. 175 (13 L. R. A. 163, 24 Am. St. Rep. 116).

In *Filer* v. *Smith*, 96 Mich. 347 (35 Am. St. Rep. 603), the court said that the officer should not receive every idle rumor, but should make diligent inquiry touching the truth of the charges as circumstances will permit before he assumes to arrest one upon the information of another.

Had the officer acted as a reasonably cautious man on this  occasion, he would have inquired from his informer who he was and what led him to think that the suit case contained intoxicating liquor.   By asking a few questions he would have known how much credence to have placed upon the information imparted.

Information of this character coming to an officer has recently received the attention of this court in *People* v. *Guertins*, 224 Mich. 8.   In this case the information received by the officer was anonymous and was similar to that received in the instant case, and the question of probable cause for the arrest was there discussed.   The charge of the court was quoted and approved by this court:

"There has been some testimony relative to the officer having received a telephone call from Garden, or from somewhere, to the effect that an automobile of a certain number was coming into Manistique and was bearing liquor.   It appears from the testimony

of the officer that the person who gave that information did not disclose his name nor the source of his information, and I charge you that, if the officer arrested the respondent solely upon the information which he received over the telephone, the arrest was not lawful, for the reason that an officer has not the right to arrest a person without a warrant and upon information which is given anonymously, without the discloser of the informant and the source of his information. The officer cannot base a reasonable belief upon information which is secured in that way."

In view of this holding as to anonymous communications, and the value to be placed upon them, we must conclude that the officer in the instant case had no such knowledge or information as would constitute probable cause for the arrest of defendant without a warrant.

The judgment of conviction should be set aside and the defendant discharged.

FELLOWS and WIEST, JJ., concurred with BIRD, J.

SHARPE, J. In addition to the testimony quoted by Mr. Justice BIRD, the record shows that the officer who made the arrest had known the defendant for more than five years; that he lived "in a little houseboat by the car ferry slip in the northwest part of the city on the shores of Grand river, living there alone." He further testified: "We had former suspicions of his carrying liquor." Chief of Police Pippel testified: "Before that day there had been some discussion in the police department * * * regarding Mr. Harry Ward, the respondent here, transactions in intoxicating liquor." Neither officer was questioned concerning the nature of the transactions or the grounds of suspicion spoken of by them.

Following the quotation in the opinion of Mr. Justice BIRD, from 2 R. C. L. p. 450, it is said:

"Probable cause for an arrest has been defined to

226—Mich.—4.

be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. Yet probable cause does not depend on the actual state of the case in point of fact, as it may turn out upon legal investigation, but on knowledge of facts and circumstances which would be sufficient to induce a reasonable belief in the truth of the accusation."

While stated by courts and text-book writers in different language, the test, as was said in *People* v. *Wilson,* 55 Mich. 506, seems to be: Were there "any facts which would induce any fair-minded man of average intelligence and judgment to believe" that defendant had committed a felony? Tiffany on Criminal Law (How. 4th Ed.), p. 92, thus puts it:

"Any constable or sheriff may arrest any person whom he suspects, on reasonable grounds, of having committed a felony."

The undisputed proofs show that the officer who made the arrest was informed by telephone that the defendant, naming him, "was coming on the car with a suit case full of whisky." He saw defendant on the street, after the car had stopped, carrying a heavy suit case. He had theretofore been suspicious that defendant was illegally engaged in the liquor business. Defendant was not employed in any legitimate business which might necessitate his carrying such a suit case. It is a well-known fact that suit cases are used in the transportation of intoxicating liquor. The officer treated the defendant with the utmost consideration. He at that time believed that defendant was committing a felony, and yet, before making the arrest, he sought to verify the information he had received as to the contents of defendant's suit case by a request that he open it, which request was refused. Were not these facts sufficient to cause any fair-minded man of average intelligence to believe that the defendant had intoxicating liquor in his

possession? I can but answer this question in the affirmative.

The rule which we here lay down as to the grounds of suspicion which will justify an arrest without a warrant should apply to all cases of felonies. Supposing that the officer had been informed by telephone that Harry Ward had robbed a bank at Spring Lake, had taken a car going in the direction of Grand Haven, and had the proceeds of the robbery in a suit case; that on the arrival of the car at Grand Haven he saw the defendant with the suit case in his possession, would not the officer have been derelict in his duty had he not accosted Ward, asked to see the contents of the suit case, and, on refusal, placed him under arrest and examined its contents? While the rights of individuals to be protected from unwarranted arrests must be carefully guarded, the rights of the public must also be considered. Robberies and hold-ups are now so frequent, and the opportunity to get away quickly so convenient, that unless officers may act promptly on information apparently reliable and circumstances reasonably convincing, there is but little hope of apprehending the guilty parties. If the officer must delay to ascertain that the information received comes from a responsible person, in many cases the opportunity to arrest will have passed. That officers do make arrests on such information, and that they are complimented on their promptness in doing so, is a matter of common knowledge.

The officer stated that he would not have arrested a person, against whom no suspicion of having violated the law had not theretofore attached, on the information received. This was but an expression of the exercise of good judgment on his part. An arrest without a warrant is always made at the peril of the officer. He must realize that his conduct is subject to review in court and that his justification is dependent upon the utmost good faith on his part. That

he may consider the character and manner of life of the suspected person goes without saying. While "All men are created equal" in the eye of the law, the former life and conduct of an individual, his reputation in the community in which he lives, is a potent safeguard to him when suspected of or tried for a criminal offense. Frequently, on a trial, it tips the scales in favor of an acquittal. The manner of life of the defendant as known to the officers had caused them to be suspicious that he was violating the liquor law. The information received was a positive statement that he was doing so. He had the heavy suit case in his possession. Coupled together, they, in my opinion, justified the action taken by the officer.

I think Mr. Justice BIRD attaches too much importance to the fact that the officer did not ascertain the name of his informant. Had it been a person unknown to him, it would not have strengthened the information imparted. The question is: Must the officer satisfy himself that it comes from a "responsible person" before he may act upon it? Had the information been in the nature of a mere rumor, the duty of the officer would have been plain. He must seek to ascertain its truth. But when he is informed in positive terms that a crime has been committed by an individual, naming him, he may act upon it when, as here, the person charged is known and in possession of the property illegally held by him and suspicion had theretofore attached to him of committing a similar offense.

As I read the opinion in *People* v. *Guertins*, 224 Mich. 8, it is in harmony with the views here expressed. The quotation from the charge of the trial court which we approved of must be considered in connection with the facts there appearing. In that case, the informant had "declined to give his name," the name of the person suspected was not stated, but some description of him was given. The officer was

simply informed that "a Ford car was bringing in some liquor and giving its number." The holding that the arrest "solely upon the information which he received over the telephone" was not lawful is in no way controlling on the facts here presented. The conclusion reached is, in my opinion, in harmony with the trend of the views expressed in *People* v. *Bressler,* 223 Mich. 597; *People* v. *Case* 220 Mich. 379; *People* v. *De Cesare,* 220 Mich. 417.

The conviction is affirmed. The trial court will proceed to sentence.

McDONALD, MOORE, and STEERE, JJ., concurred with SHARPE, J.

CLARK, C. J., concurred in the result.