## MOORE v. PAROLE BOARD.

### DECISION OF THE COURT.

1. CRIMINAL LAW—CREDIT FOR TIME SERVED UNDER PRIOR INVALID SENTENCE—ELIGIBILITY FOR PAROLE.

Sentence of 25 to 40 years imposed on defendant after conviction of second-degree murder, in imposition of which the sentencing judge expressly refused to allow credit for 20 years of imprisonment served by defendant on life term after illegal conviction of first-degree murder for same crime, is void because imposed under authority of statute which is unconstitutional because it reposed unlimited discretion in sentencing judge in determining whether to grant or refuse credit for time already served, and cause is remanded for resentencing in conformity with amended constitutional statute per KELLY, T. M. KAVANAGH, O'HARA, and ADAMS, JJ.; sentence is void because imposed in violation of statute, which was mandatory in requiring grant of credit for time already served, although worded permissively, and case is remanded for resentencing in conformity with statute per DETHMERS, C. J., and SOURIS, J.; was valid because imposed for crime outside the purview of sentence-credit statute, but convict is entitled to credit for good time earned under prior illegal conviction, in considering his eligibility for parole, per BLACK and BRENNAN, JJ., (PA 1927, No 175, ch 9, § 11a, as added by PA 1954, No 205, and amended by PA 1965, No 67).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–5, 10, 12–14, 17–19] 41 Am Jur, Prisons and Prisoners § 44. Right to credit for time served under erroneous or void sentence or invalid judgment of conviction necessitating new trial. 35 ALR2d 1283.

[2, 6] 39 Am Jur, Pardon, Reprieve, and Amnesty § 81 *et seq.*

[7] 30 Am Jur, Judgments § 2.

[8] 21 Am Jur 2d, Criminal Law §§ 533, 536.

[9] 21 Am Jur 2d, Criminal Law § 572.

[11] 39 Am Jur, Pardon, Reprieve, and Amnesty § 83 *et seq.*

[15] 21 Am Jur 2d, Criminal Law § 571.

[16] 41 Am Jur, Prisons and Prisoners § 41 *et seq.*

SEPARATE OPINION.

DETHMERS, C. J., and SOURIS, J.

2. MANDAMUS—PAROLE BOARD—VOID SENTENCE.

*Mandamus to compel the parole board to accept jurisdiction and give convicted criminal credit for time spent on a previous void sentence is not proper where the sentencing judge has not given such credit.*

3. STATUTES—RETROACTIVITY—POWER TO PAROLE.

*Amendment to statute which now requires a trial judge in sentencing one convicted of crime to give credit for time served on a prior void sentence, does not operate retroactively to require parole board to grant such credit to a prisoner serving a term of imprisonment imposed prior to effective date of amendment, the power of commutation of sentences being a grant exclusively to the governor under the Constitution (Const 1963, art 5, § 14; CLS 1961, § 769.11a, as amended by PA 1965, No 67).*

4. SAME—CONSTRUCTION OF STATUTES—MAY—SHALL.

*The word may can be construed as shall in the context of its use in legislation.*

5. CRIMINAL LAW—CONSTRUCTION OF STATUTES—SENTENCE—CREDIT FOR PRIOR VOID CONVICTION.

*Statute which provides that the trial judge may, in imposing sentence, grant or allow credit against and by reduction of statutory maximum such time as a defendant has served upon a void conviction based on the same facts, is construed to mean that the judge shall grant such credit, this being now established as a matter of enlightened State policy by subsequent amendment making the giving of such credit mandatory (CLS 1961, § 769.11a, as amended by PA 1965, No 67).*

6. MANDAMUS—REMAND—CAUSE IN ABEYANCE.

*Mandamus to parole board is remanded to Court of Appeals where no present duty exists on part of parole board to act, and cause is to be held in abeyance pending application of defendant to trial court for correction of sentence to give him credit for time served upon a previous void conviction, following which, if parole board accepts jurisdiction and acts, petition for mandamus shall be dismissed, and if parole board fails to exercise its jurisdiction, writ of mandamus shall issue (CLS 1961, § 769.11a, as amended by PA 1965, No 67).*

Separate Opinion.

Kelly, T. M. Kavanagh, O'Hara, and Adams, JJ.

7. Judgment—Definition.

*A judgment is the decision or sentence of the law, given by a court of justice or other competent tribunal, as the result of preceedings instituted therein.*

8. Criminal Law—Excessive Sentence—Appellate Courts.

*Courts of review have statutory authority to reverse the excess portion of a sentence imposed beyond that allowed by law, and to affirm as to the lawful part (CL 1948, § 769.24).*

9. Same—Partial Execution of Illegal Sentence.

*A court has the power to substitute a legal sentence for an illegal one already imposed, even though the illegal sentence has been partly executed.*

10. Same—Credit for Time Served on Prior Invalid Sentence—Discretion of Court.

*Grant of credit on valid sentence for time served on prior invalid sentence was in discretion of the judge imposing sentence, under the common law of this State.*

11. Same—Sentence—Courts—Executive Branch.

*Neither the Supreme Court nor the sentencing court has the power or authority to change or vacate a valid sentence and impose a new one, because the power to reprieve, commute, or pardon is lodged in the executive branch of government.*

12. Same—Credit for Time Served Under Prior Invalid Sentence—Discretion of Court.

*Former statute giving to the judiciary the power as a matter of grace to give credit or refuse credit for time served under a void sentence, a void conviction, or a prior erroneous conviction is unconstitutional because it creates an unreasonable classification by permitting unequal treatment of defendants (PA 1927, No 175, ch 9, § 11a, as added by PA 1954, No 205).*

13. Same—Mandatory Credit for Time Served Under Prior Invalid Sentence.

*Amended statute requiring sentencing judge to give credit for time served under prior void sentence when imposing new sentence eliminates constitutional infirmity of former statute which made granting or refusing credit a matter of grace of the sentencing judge (PA 1927, No 175, ch 9, § 11a, as added by PA 1954, No 205, and amended by PA 1965, No 67).*

14. SAME—CREDIT FOR TIME SERVED UNDER PRIOR INVALID SENTENCE.
   *Credit for time served under prior void sentence, required by
   statute to be granted when new sentence is imposed, carries
   with it recognition of regular or special "good time" earned
   during illegal imprisonment (Pa 1927, No 175, ch 9 § 11a,
   as amended by PA 1965, No 67).*

SEPARATE OPINION.

BLACK and BRENNAN, JJ.

15. CRIMINAL LAW—DISCRETION OF COURT—REDUCTION OF SENTENCE.
   *Reduction of a sentence is a subjective thing in the mind of the
   sentencing judge when the maximum term of years is left
   entirely to the discretion of the sentencing judge.*

16. SAME—SENTENCE CREDIT.
   *Every convict who shall have no infraction of the rules of the
   prison or the laws of the State recorded against him, is entitled
   to receive a reduction from his sentence, known as good time and
   special good-time allowances (CLS 1961, § 800.33).*

17. SAME—SENTENCE CREDIT—LIFE IMPRISONMENT.
   *The sentence credit statute requiring allowance of credit against
   and by reduction of the statutory maximum sentence; does
   not effect a reduction of a sentence to imprisonment for life
   by the number of years served under a prior invalid sentence
   (CLS 1961, § 800.33).*

18. SAME—SENTENCE CREDIT STATUTE—LIFE IMPRISONMENT.
   *The sentence credit statute does not apply to first-degree murder
   since life imprisonment is mandatory and no amount of
   time served under a previous invalid sentence could reduce
   that penalty (CLS 1961, § 800.33).*

19. SAME—GOOD TIME UNDER INVALID SENTENCE.
   *Prisoner under valid 25-to-40 year sentence for second-degree
   murder after second trial held, a "convict" within the meaning
   of the good-time statute entitling him to allowances of time
   for good behavior while incarcerated under previous invalid
   sentence (CLS 1961, § 800.33).*

Appeal from Court of Appeals, Division 2; Hol-
brook, P. J., McGregor and Quinn, JJ.  Submitted
June 7, 1967.  (Calendar No. 3, Docket No. 51,607.)
Decided December 4, 1967.

4 Mich App 261, reversed.

Mandamus by Willie B. Moore against Frank G. Buchko, Chairman, Michigan Parole Board, to compel board to accept jurisdiction and to credit on his sentence the time he served on a prior void sentence. Writ denied by Court of Appeals. Plaintiff appeals. Reversed and remanded.

*Morris, Culver & Corsiglia (William H. Culver,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James D. Mueller,* Assistant Attorney General, for defendant, suggesting that plaintiff be given credit for time served under prior void sentence.

*Amicus Curiae:*

*Erwin B. Ellmann (Norton J. Cohen,* of counsel), for American Civil Liberties Union of Michigan.

SOURIS, J. *(for reversal).* Plaintiff, by original action, sought from the Court of Appeals its writ of mandamus to compel the Michigan parole board to assume jurisdiction over him for the purpose of considering his entitlement to release from imprisonment on parole. Upon plaintiff's application to review denial of the writ by the Court of Appeals (*Moore* v. *Parole Board,* 4 Mich App 261), we granted leave to appeal.

Moore, without the assistance of counsel, pled guilty to first-degree murder in 1938 and was convicted and sentenced therefor to life imprisonment in solitary confinement at hard labor as required by our statute. CL 1948, § 750.316 (Stat Ann 1954

Rev § 28.548). In 1950 the successor of the sentencing judge denied a delayed motion to vacate sentence and for new trial and this Court affirmed. *People* v. *Moore* (1955), 344 Mich 137. The United States Supreme Court, however, reversed on the ground that petitioner had sustained his burden of proving that his guilty plea was invalidly accepted because obtained without the benefit of counsel and absent an intelligent waiver of his right to counsel. *Moore* v. *Michigan* (1957), 355 US 155 (78 S Ct 191, 2 L ed 2d 167). In 1958, on remand, Moore was tried for first-degree murder, this time with counsel's assistance, and was convicted by jury verdict of second-degree murder.[1] The trial judge, in sentencing Moore to imprisonment for 25 to 40 years, commented that he had considered, "but not by way of reduction of sentence", the fact that Moore had spent nearly 20 years in prison under the sentence invalidated by the United States Supreme Court.

This action in mandamus was commenced in 1964. Under our statute (CLS 1961, § 791.234 [Stat Ann 1965 Cum Supp § 28.2304]), prisoners sentenced to imprisonment for indeterminate terms become subject to the jurisdiction of the parole board when they have served time equal to their minimum sentences less allowances made for regular and special good-time service. Unless plaintiff prevails herein, he claims that he will not be subject to the board's jurisdiction, and thus not eligible for parole, until at the earliest 1970 when his minimum term of 25 years less regular and special good-time allowances since his 1958 conviction will have been served. It is his contention in this proceeding that the nearly 20 calendar years he served under his invalidated conviction and sentence from 1938 to 1958, and the regular and special good-time credit he earned during

---

[1] See CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549).—REPORTER.

that time, should be credited to him for the purpose of determining the parole board's jurisdiction to consider him for parole and, we assume, for the purpose of determining the expiration of his maximum sentence.

Had Moore's second conviction occurred after June 22, 1965, the date PA 1965, No 67 was adopted and given immediate effect, it is agreed that the sentencing judge would have been required to credit him for the time he had served under the sentence imposed for the prior erroneous conviction by reduction of the maximum sentence to be imposed.[2] In 1958, however, when Moore was convicted the second time, the statute's language was permissive only and not, as it has been since 1965, mandatory.

Moore contends that the statute has been construed to be retroactively applicable, relying upon a statement appearing in one of our earlier decisions before the 1965 amendment (*Attorney General* v. *Recorder's Court Judge* [1954], 341 Mich 461, 475), and, furthermore, that the 1965 amendment did not adversely affect the statute's retroactivity. In the *Attorney General's Case* this Court said, "By its language this enactment was made retroactive." It is this statement the plaintiff relies upon to support his contention that the statute, before and after its

---

[2] The statute, as amended in 1965, reads as follows:

"Whenever any person has been heretofore or hereafter convicted of any crime within this State and has served any time upon a void sentence, the trial court, in imposing sentence upon conviction or acceptance of a plea of guilty based upon facts arising out of the earlier void conviction, *shall* in imposing the sentence specifically grant or allow the defendant credit against and by reduction of the statutory maximum by the time already served by such defendant on the sentence imposed for the prior erroneous conviction. Failure of the corrections commission to carry out the terms of said sentence shall be cause for the issuance of a writ of habeas corpus to have the prisoner brought before the court for the taking of such further action as the court may again determine." (Emphasis added.) CLS 1961, § 769.11a, as amended by PA 1965, No 67 (Stat Ann 1965 Cum Supp § 28.1083[1]). The only change made in 1965 was to substitute the word "shall" for the word "may" which previously appeared.

amendment, is retroactively applicable and that, therefore, it permitted, and now requires, the parole board to credit a prisoner with time served and earned during prior imprisonment under an erroneous conviction.

The contention, however, does not fit the language of the statute which grants power only to the sentencing judge and not to the parole board. Furthermore, if it be argued that the statute authorizes the sentencing judge now to reduce a prior valid sentence to the extent of time served during imprisonment under an erroneous conviction, prior decisions of this Court suggest that the statute so construed would impinge impermissibly upon the power of pardon and commutation of sentences granted exclusively to the governor by article 6, § 9 of our Constitution of 1908 and article 5, § 14 of our Constitution of 1963. *People* v. *Freleigh* (1952), 334 Mich 306, and cases cited therein. For these reasons we cannot give to the statute the meaning urged upon us by plaintiff, nor do we believe this Court's statement in the *Attorney General's Case,* quoted above, means other than that the statute is retroactive only in the sense that time served under erroneous convictions before, as well as after, its enactment thereafter could be considered by a sentencing judge and credited against the sentence to be imposed upon conviction after retrial.

An alternative contention made by plaintiff is that the statute, even in its original form, requires a sentencing judge to allow credit for past time served under an erroneous conviction, and we agree. In numerous cases, in this State and in other jurisdictions, the word "may" when used in legislation or in contracts has been construed to mean "shall", the context of its use considered. See, for example, the following cases from this Court: *McBrian* v. *City of Grand Rapids* (1885), 56 Mich 95; *Grand Lodge*

*of Ancient Order of United Workmen* v. *Fisk* (1901), 126 Mich 356; *Gitchell* v. *Whipple* (1901), 126 Mich 646; *Freud* v. *Wayne Circuit Judge* (1902), 131 Mich 606; and *Brooke* v. *Brooke* (1935), 272 Mich 627. Cf. *Smith* v. *School District No. 6, Fractional, Amber Township* (1928), 241 Mich 366. See, also, *Supervisors of Rock Island County* v. *United States, ex rel. State Bank* (1867), 4 Wall (71 US) 435 (18 L ed 419) (relied upon pertinently by this Court in *Corliss* v. *Village of Highland Park* [1903], 132 Mich 152, 160, 161), where the Supreme Court, in construing a statute which provided that a board of supervisors "may, if deemed advisable", levy a special tax when the county owed debts its current revenues were not sufficient to pay, held the quoted phrase to require a tax levy, the statutory condition existing. It expressed the reasons for its decision, singularly applicable to the decision we reach, as follows:

"In *King* v. *Inhabitants of Derby*, Skin 370 (90 Eng Rep 164), there was an indictment against 'divers inhabitants' for refusing to meet and make a rate to pay 'the constables' tax.' The defendants moved to quash the indictment, 'because they are not compellable, but the statute only says that *they may*, so that they have their election, and no coercion shall be.' The court held that *may*, in the case of a public officer, is tantamount to *shall*, and if he does not do it, he shall be punished upon an information, and though he may be commanded by a writ, this is but an aggravation of his contempt.

"In *Rex & Regina* v. *Barlow*, 2 Salk 609 (91 Eng Rep 516), there was an indictment upon the same statute, and the same objection was taken. The court said: 'When a statute directs the doing of a thing for the sake of justice or the public good, the word *may* is the same as the word *shall*: thus, 23 Hen VI., says the sheriff *may* take bail. This is construed he *shall*, for he is compellable to do so.'

"These are the earliest and the leading cases upon the subject. They have been followed in numerous English and American adjudications. The rule they lay down is the settled law of both countries.

"In *Mayor of City of New York* v. *Furze,* 3 Hill 612, and in *Mason* v. *Fearson,* 9 How (50 US) 248, the words, 'it shall be lawful' were held also to be mandatory. See *Attorney General* v. *Lock,* 3 Atk 164 (26 Eng Rep 897); *Alderman Blackwell's Case,* 1 Vern 152 (21 Eng Rep 868); Dwarris on Statutes 712; *Malcom* v. *Rogers,* 5 Cow (NY) 188; *Newburg Turnpike Co.* v. *Miller,* 5 Johns Ch (NY) 101, 113; *Justices of Clark County Court* v. *Paris, W. & K. Turnpike Co.,* 11 B Mon (50 Ky) 143; *Minor* v. *Merchants Bank,* 1 Peters (26 US) 48, 64; *Commonwealth* v. *Johnson,* 2 Binn (Pa) 275; *Virginia* v. *Justices,* 2 Va Cas 9; *Ohio, ex rel. Whiteman,* v. *Governor,* 5 Ohio St 528; *Coy* v. *City Council of Lyons,* 17 Iowa 1.

"The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless.

"In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty.'

"The line which separates this class of cases from those which involve the exercise of a discretion, judicial in its nature, which courts cannot control, is too obvious to require remark. This case clearly does not fall within the latter category. *People* v.

*Superior Court,* 5 Wend (NY) 114, 125, 10 Wend (NY) 285, 289; *People v. Vermilyea,* 7 Cow (NY) 369, 393; *Hull v. Supervisors,* 19 Johns (NY) 260." *Supervisors of Rock Island County v. United States, ex rel. State Bank* (1867), 4 Wall (71 US) 435, 446 (18 L ed 419).

It may be argued plausibly that the 1965 amendment, changing the word "may" to "shall", demonstrates that only thereafter did the legislature intend mandatory application of the statute. However, it is also plausible to argue, and we so conclude, that the legislature in 1965 simply eliminated any possibility of mistaking its original intention. The very nature of the law's subject matter reinforces our conclusion. Six years before the statute was originally enacted, this Court expressed the view that:

"In the last analysis, the law is not vindictive, and possibly the criminal code should be amended as was done in Iowa, so as to credit a prisoner on a new sentence with the time he has served under a void sentence. This also would bring uniformity in the practice. This, however, is a matter for the legislature, not for us." *In re Doelle* (1948), 323 Mich 241, 249.

By this language this Court announced its recognition of justice's requirement that credit be given in the circumstances that we confront today, while acknowledging that its implementation as a matter of uniform State policy was a legislative responsibility. Notwithstanding our acknowledgment of the legislature's prime responsibility for establishment of such a policy, however, the late Judge W. McKay Skillman, judge of the recorder's court in the city of Detroit, just two years later, effectively credited a defendant upon retrial with time served on a prior vacated conviction by imposing the new sentence *nunc pro tunc* as of the date of the original

sentence even before there was legislative authority therefor and this Court later affirmed his action in doing so. *Attorney General* v. *Recorder's Court Judge* (1954), 341 Mich 461.

The point is that both the judicial and legislative branches of government by their words and conduct have recognized the justice of crediting such prior service against new sentences and, indeed, now the practice has been established as a matter of enlightened State policy. Thus, by construing the original legislative enactment to have been mandatory, rather than merely permissive, we do no violence to such established State policy.

Plaintiff also contends that denial of credit for past service on a void conviction violates Federal and State constitutional guarantees of equality and due process and against double jeopardy. Fifth and Fourteenth Amendments to the United States Constitution; Mich Const 1908, art 2, §§ 1, 14 and 16, and Mich Const 1963, art 1, §§ 1, 2, 15 and 17. While it is not necessary to pass upon such issues, having concluded as we have that plaintiff was entitled by statute to the credit he seeks, we note that identical and related claims recently have received the attention of many State and Federal courts. See, for example, *People* v. *Henderson* (1963), 60 Cal 2d 482 (35 Cal Rptr 77, 386 P2d 677); *Patton* v. *North Carolina* (CA 4, 1967), 381 F2d 636; *United States* v. *White* (CA 7, 1967), 382 F2d 445, and other authorities cited in each of the foregoing cases. These issues also have received recently the attention of legal scholars. See, for example, Agata, "Time Served Under a Reversed Sentence or Conviction—a Proposal and a Basis for Decision" (1963), 25 Mont LR 3; Van Alstyne, "In Gideon's Wake: Harsher Penalties and the 'Successful' Criminal Appellant" (1965), 74 YLJ 606; Note, "Twice in Jeopardy" (1965), 75 YLJ 262; annotation, "Right to credit

for time served under erroneous or void sentence or invalid judgment of conviction necessitating new trial", 35 ALR2d 1283.

There remains for disposition a problem of procedure. This is an original proceeding for writ of mandamus against the parole board, but until the plaintiff's order of sentence is corrected to reflect the credit we hold the statute required the sentencing judge to grant, the parole board has no clear legal duty to perform which can be compelled by mandamus. Accordingly, this cause is remanded to the Court of Appeals to be held in abeyance by that Court to accord plaintiff an opportunity to apply to the successor of the sentencing judge for correction of his order of sentence in accordance herewith. Thereafter, within a reasonable time, if the parole board exercises jurisdiction over plaintiff pursuant to CLS 1961, § 791.234 (Stat Ann 1965 Cum Supp § 28.2304) or if otherwise plaintiff be discharged from his sentence, the Court of Appeals shall dismiss the plaintiff's petition for the writ of mandamus. On the other hand, if the parole board fails so to exercise its jurisdiction over plaintiff, the Court of Appeals shall issue its writ of mandamus to compel such action forthwith.

Reversed and remanded. Plaintiff may tax his costs.

DETHMERS, C. J., concurred with SOURIS, J.

ADAMS, J. *(for reversal and resentencing)*. I am unable to agree with Justice SOURIS that the word "may" as used in PA 1954, No 205 (CLS 1961, § 769.11a [Stat Ann 1954 Rev § 28.1083(1)]) should be construed to mean "shall".

The powers of courts in connection with sentencing have presented questions since the early judicial history of this State. In the case of *Crippen* v. *Peo-*

*ple* (1860), 8 Mich 117, defendant was indicted for a public nuisance arising from his acts in constructing and maintaining a mill dam. He was convicted and ordered by the court to abate the nuisance and to demolish the dam. There was no sentence of imprisonment or fine. On appeal the question was whether the order for removal of the dam was a final judgment on which a writ of error would lie. Justice MANNING, writing for the Court, said:

"A judgment is the decision or sentence of the law, given by a court of justice or other competent tribunal, as the result of proceedings instituted therein."

Justice MANNING came to the conclusion that the judgment of the trial court was erroneous. He then said (p 124):

"For these reasons, as there is no judgment for imprisonment or a fine, we regard the order for the removal of the dam as erroneous. And here the question arises, whether, the error being in the judgment itself, and not in a part of the record preceding the judgment, we can do any thing more than reverse the judgment. *We clearly have no power to correct the error by rendering such judgment as the court below should have given.*" (Emphasis added.)

In the case of *Elliott* v. *People* (1865), 13 Mich 365, plaintiff in error, convicted in the recorder's court on an information for embezzlement, was sentenced to the Detroit house of correction for two years. He appealed, alleging that no sentence could lawfully be given requiring him to be confined in the house of correction for more than one year. This Court agreed and held:

"We think this is the correct view of the statute; and that when the house of correction is made the

place of imprisonment for county jail offenses, it must be treated as if it were itself, to that extent, the county jail. We think, therefore, that the sentence for more than one year was unauthorized and invalid. Being an excess of authority, and therefore an unlawful sentence, *we cannot substitute for it another sentence which the court below might have given,* but did not give in fact: *Rex* v. *Ellis,* 5 B & C 395 (108 Eng Rep 147); *Rex* v. *Bourne,* 7 Ad & El 58 (112 Eng Rep 393); *Shepherd* v. *Commonwealth, supra* [2 Metc (43 Mass) 419]. *There being no error except in the judgment, there can be no new trial,* and the court below cannot give a second judgment. *The judgment must therefore be reversed, and the prisoner discharged.*" (p 367.) (Emphasis added.)

See, also, *O'Neil* v. *People* (1867), 15 Mich 275.

These cases undoubtedly received the attention of the legislature. PA 1867, No 170, read as follows:

"Whenever, in any criminal case, tried in any circuit court or in the recorder's court in the city of Detroit, the defendant shall be adjudged guilty, and a punishment by fine or imprisonment shall be imposed in excess of that allowed by law, the judgment *shall* not for that reason alone be judged altogether void, nor be wholly reversed and annulled by any court of review, but the same *shall* be valid and effectual to the extent of the lawful penalty, and *shall* only be reversed or annulled on writ of error or otherwise, *in respect to the unlawful excess.*"[1] (Emphasis added.)

In cases involving the excessive sentence statute this Court has reversed the excess portion of the sentence but affirmed the remainder. A number of such cases have been decided since 1867. See, for example, *People* v. *Parkhurst* (1883) 50 Mich 389;

---

[1] This same provision has been carried forward into the code of criminal procedure and appears without substantial change as CL 1948, § 769.24 (Stat Ann 1954 Rev § 28.1094).

*People* v. *Ver Planck* (1925), 231 Mich 340; *Cross Company* v. *UAW Local No. 155* (1966), 377 Mich 202, 223.

In addition to the excessive sentence cases, the Court has dealt with a variety of other sentences without relying on the excessive sentence statute: illegal—*People* v. *Ancksornby* (1925), 231 Mich 271; erroneous—*People* v. *Baum* (1930), 251 Mich 187; improper—*People* v. *Hoaglin* (1933), 262 Mich 162; irregular—*People* v. *Harrison* (1916), 194 Mich 363, *People* v. *Ver Planck, supra;* wrong—*People* v. *Robinson* (1931), 253 Mich 507; nullity—*People* v. *Gunsell* (1951), 331 Mich 105; invalid—*In re Rhyndress* (1947), 317 Mich 21.

In the above cases, almost without exception, the Court has found that the conviction itself was proper and that only the sentence was in some respect deficient. The cases were sent back to the trial judge for resentencing. The reasons for following this procedure, as opposed to the procedure followed in the case of excessive sentences, were discussed in the case of *People* v. *Farrell* (1906), 146 Mich 264. Subsequently, in the case of *In re Vitali* (1908), 153 Mich 514, the Court in a unanimous opinion announced:

"The case of *People* v. *Farrell* (1906), 146 Mich 264, is authority for the proposition that where the trial court has imposed an illegal sentence it has the power to substitute for it a legal sentence notwithstanding the illegal sentence has been partly executed." (p 515.)

See, also, *People* v. *Baum, supra; People* v. *Mellor* (1942), 302 Mich 537.

Cases allowing credit for time served under an unlawful imprisonment begin with *People* v. *Parkhurst, supra.* The defendant was convicted of embezzlement and confined in the house of correction

at Ionia for one year. Under the statute the punishment for the offense was three months. The Court noted that the judgment should be reversed for the excess portion of the sentence only, and then said *"but as three months have now expired, the defendant is entitled to an immediate discharge."* (Emphasis added.) See, also, *In the Matter of Henry Franklin* (1889), 77 Mich 615; *People* v. *Gilbert* (1910), 163 Mich 511. In *People* v. *Ancksornby, supra,* the trial judge was instructed by this Court to "take into consideration the fact that the defendant has served six months in prison under the unauthorized sentence." In *In re Cowan* (1938), 284 Mich 343, credit was given upon new sentence for all time actually served under the vacated sentence. In *In re Doelle* (1948), 323 Mich 241, defendant had served almost eight years when the sentence was vacated. On new trial, defendant pled guilty to a lesser offense. He was sentenced to a minimum term of one year and a maximum term of four years' imprisonment in accordance with the statute. In denying defendant's claim that he was entitled to full credit for the time served under the vacated sentence, Justice Butzel wrote (four other Justices concurring):

"It appears that the trial judge did consider defendant's previous imprisonment when he set and recommended a minimum term of one year. * * * In the last analysis, the law is not vindictive, and *possibly the criminal code should be amended as was done in Iowa, so as to credit a prisoner on a new sentence with the time he has served under a void sentence. This also would bring uniformity in the practice.* This, however, is a matter for the legislature, not for us." (Emphasis added.)

In *In re DeMeerleer* (1948), 323 Mich 287, defendant was denied full credit for the time served under an earlier sentence which had been vacated

by the United States Supreme Court. In *In re Wall* (1951), 330 Mich 430, sentence under the habitual criminal statute was vacated and defendant was re-sentenced under the prior jury verdict. It was held defendant, having already served the full statutory maximum applicable to the later sentence, was entitled to his discharge. In the case of *Attorney General v. Recorder's Court Judge* (1954), 341 Mich 461, this Court upheld the device used by the recorder's court judge of imposing a sentence on a lesser offense *nunc pro tunc* as of the date of the original sentence which had been vacated. This in effect gave defendant full credit for the time he had served in prison under an improper verdict.

In the majority of the above cases it has been recognized that a defendant was entitled to credit for time served under an unlawful imprisonment. But in the *Doelle* and *DeMeerleer Cases,* because the defendant later pled guilty or was convicted of a lesser offense, it was held that the grant of credit was in the discretion of the judge upon sentencing but limited to the maximum and minimum sentences provided by law. *In re Doelle* directed the legislature's attention to the problem.

PA 1954, No 205, was an effort by the legislature to define the powers of the judiciary in connection with a grant of credit for time served under an unlawful imprisonment. It is so well recognized that "may" is permissive and "shall" mandatory, on the basis of use of the word "may", there is a strong inference the legislature intentionally made the grant or allowance of credit a matter for the discretion of the sentencing judge. An examination of chapter 9, Judgment and Sentence, of the code of criminal procedure[2] would indicate that the legislature had no

---

[2] PA 1927, No 175 (CL 1948, § 769.1 *et seq.* [Stat Ann 1954 Rev § 28.841 *et seq.*]).—Reporter.

difficulty in determining whether to use "shall" or "may" to mandate or to permit various actions under the provisions of that chapter. See, for example, the use of these words in sections 2a,[3] 3, 4 and 5, which precede section 11a (added by PA 1954, No 205) and section 12, as amended,[4] which follows. Up to the time of legislative enactment, the cases had apparently held that the discretion of the sentencing judge was restricted by the maximum and minimum terms provided for in the statute under which a defendant was convicted or pled guilty. PA 1954, No 205 purported to enlarge the discretionary powers of a judge so that in a case of unlawful imprisonment full credit for the time served could be given.

As has been noted, this Court has dealt with a great variety of unlawful imprisonments and has exercised judicial power, supplemented in some instances by legislative authorization, to correct the same. Where the sentence originally imposed is valid and legal, however, the situation is entirely different. Neither the Supreme Court nor the sentencing court has the power or authority to change or vacate such a sentence and subsequently to impose a new one. *People* v. *Meservey* (1889), 76 Mich 223; *People* v. *Kelley* (1890), 79 Mich 320; *In re Dudney* (1942), 303 Mich 402; *People* v. *Fox* (1945), 312 Mich 577; *People* v. *Chivas* (1948), 322 Mich 384; *Elliott* v. *Department of Corrections* (1955), 343 Mich 681; *People* v. *Connor* (1957), 348 Mich 456. As stated by Justice SOURIS, the reason for the rule is that the power to reprieve, commute, or pardon is lodged in the executive branch of government. For examples of the executive power, see *People* v. *Brown* (1884), 54 Mich 15; *People* v. *Moore* (1886), 62 Mich 496;

---

[3] Added by PA 1953, No 130 (CLS 1961, § 769.29 [Stat Ann 1954 Rev § 28.1074(1)]).—REPORTER.

[4] By PA 1949, No 56 (CLS 1961, § 769.12 [Stat Ann 1954 Rev § 28-.1084]).—REPORTER.

*People* v. *Cummings* (1891), 88 Mich 249; *Rich* **v.** *Chamberlain* (1895), 107 Mich 381; *People* v. *Freleigh* (1952), 334 Mich 306.

It follows that if PA 1954, No 205, is a constitutionally valid statute, defendant's sentence must be upheld, the trial judge having exercised a permissive discretion. The infirmity in PA 1954, No 205, is that it grants without standard or rule of law to the judiciary the power as *a matter of grace* to recognize or to refuse to a defendant credit for the time served by him under a "void sentence", a "void conviction", or a "prior erroneous conviction".[5] It will be recalled that, under the excessive sentence statute, the excessive portion of the sentence *shall* be reversed or annulled. The unlawful sentence *is* to be corrected. Under PA 1954, No 205, however, the unlawful sentence having already taken place, the defendant is at the mercy or discretion of the sentencing judge. If denied the credit, he has no remedy. This creates a wholly unreasonable classification. It is quite as unfair to exact double time as excessive time. It is equally unfair to leave this to the discretion of the sentencing judge with the result that one defendant may receive credit for the portion of his debt paid to society while another defendant may not. The result, statewide, is total absence of uniformity in the treatment of defendants.

Violation of due process in a situation such as we have here has been analyzed by Judge Sobeloff of the United States court of appeals for the Fourth Circuit, in *Patton* v. *North Carolina* (1967), 381 F2d 636, as follows:

"The principle of fair dealing which impels judges in passing sentence to take into account the time a defendant was deprived of his liberty while awaiting trial, *Dunn* v. *United States* (CA 4, 1967), 376 F2d 191,

---

[5] The language of PA 1954, No 205.

insists even more inexorably that he shall not be finessed out of credit for time he was forced to serve under an invalid sentence. The trial and conviction may be voided on appeal, but the time illegally exacted by the unconstitutional sentence is an irreversible fact. It is grossly unfair for society to take five years of a man's life and then say, we now acknowledge that this should not have happened, but we will set everything right by refusing to recognize that it did happen."

The 1965 amendment by changing the word "may" to "shall" eliminates the constitutional infirmity contained in the statute. A sentencing judge should proceed as heretofore in imposing sentence in accordance with the provisions of chapter 9 of the code of criminal procedure, except that in imposing sentence for a term of years he shall give credit for time served[6] under an illegal sentence in accordance with PA 1965, No 67 (CL 1948, § 769.11a, as amended [Stat Ann 1965 Cum Supp § 28.1083(1)]).

I agree with the suggestion of Justice SOURIS to remand to the Court of Appeals for eventual remand to the sentencing judge who shall vacate the erroneous sentence and resentence with proper credit for time served.

Reversed and remanded. No costs.

KELLY, T. M. KAVANAGH, and O'HARA, JJ., concurred with ADAMS, J.

BRENNAN, J. *(for grant of writ for limited purpose)*. Plaintiff was convicted in 1958 of murder in the second degree. Previously, the plaintiff had spent nearly 20 years in prison under an invalid sentence after a plea of guilty, arising out of the same homicide. The prior plea and sentence were invali-

---

[6] It follows, *a fortiori*, that such credit includes recognition of regular or special good time earned during an illegal incarceration.

dated by the United States Supreme Court.[1]  At the time of sentencing in this case, there was a statute in Michigan which permitted the trial judge to grant or allow the defendant credit against and reduction of the statutory maximum sentence equal to the time already served on the prior erroneous conviction.[2] The offense of second-degree murder of which the defendant was convicted in 1958 is punishable by imprisonment in the State prison for life or any term of years in the discretion of the court.[3]

Without discussing the question of whether the prior sentence credit statute was mandatory or permissive in 1958, it is readily apparent that the prior sentence credit statute does not apply to the offense of second-degree murder.  The statute required allowance of credit against and by reduction of the statutory maximum sentence.  It is patently impossible to reduce a sentence of life by the number of years served under the prior invalid sentence.  Thus a sentence of "life imprisonment less 20 years" is meaningless, absent God-like foreknowledge of the future or a statutory formula utilizing life expectancy tables.  Similarly, where the maximum term of years is left entirely to the discretion of the sentencing judge, it is impossible meaningfully to reduce the maximum by the number of years served under the previous sentence.  In such a case, the process of reduction is entirely a subjective thing in the mind of the sentencing judge.

In the present case, the sentencing judge in imposing a sentence of 25 to 40 years commented that he had considered Moore's previous invalid imprisonment "but not by way of reduction of sentence."  In an offense, such as second-degree murder where no

[1] *Moore* v. *Michigan* (1957), 355 US 155 (78 S Ct 191, 2 L ed 2d 167).
[2] CLS 1961, § 769.11a, as amended by PA 1965, No 67 (Stat Ann 1965 Cum Supp § 28.1083[1]).
[3] CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549).

specific statutory maximum sentence is imposed, the best we could expect of a judge in applying this statute is that he declare upon the record that he has reduced the maximum sentence by the amount of the previous invalid sentence. Had the trial judge in this case sentenced the defendant to a term of 25 to 60 years, then reduced the 60 by 20, he would have achieved the same result, and clearly in the light of his discretion under the second-degree murder statute, he would have been entitled to do so. Neither can it be contended that this impossibility of applying the sentence credit statute to second-degree murder is a mere legislative oversight or a condition of grave injustice or a constitutional deprivation which ought to be cured by this Court's engaging in fancy judicial footwork.

It is obvious that the sentence credit statute does not apply to first-degree murder for in that case life imprisonment is mandatory and no amount of time served under a previous invalid sentence could reduce that penalty. If the trial judge in this case had seen fit to impose a life sentence upon the defendant as he had the authority to do, none could say that it was possible to reduce such a maximum by any specific term of years.

Therefore, the real question in this case is not whether credit should have been given against the maximum sentence under the prior invalid sentence credit statute,[4] but rather whether good time and special good time made by Moore during his prior erroneous incarceration should be counted in determining his eligibility for parole under the 1958 conviction. In the case of *Meyers* v. *Jackson* (1929), 245 Mich 692, 693, the life sentence of Meyers was commuted by the governor "so that the same will expire 15 years from date of sentence." Meyers argued

---

4 CLS 1961, § 769.11a, as amended by PA 1965, No 67 (Stat Ann 1965 Cum Supp § 28.1083[1]).

that he was entitled to good-time allowances by way of reduction of the 15-year commuted sentence. The Court held:

"Obviously, the question of good time applies only to those [sentences] where the date of expiration of sentence is fixed. Plaintiff was sentenced to imprisonment for life. The period of his imprisonment was not fixed. There is no provision in the statute whereby a prisoner sentenced to imprisonment for life, without parole or commutation of sentence at an earlier period, may be discharged." *Meyers* v. *Jackson, supra.*

At first blush, it would appear that the *Meyers Case* is a precedent for the proposition that a person sentenced to life imprisonment cannot earn good time. The statute concerning good time[5] does not make any such distinction. It says:

"Every convict who shall have no infraction of the rules of the prison or the laws of the State recorded against him, shall be entitled to and shall receive a reduction from his sentence as follows: [there follows the itemization of the various good time allowances]."

The statute specifically says that it shall not be construed so as to allow any good time in cases of commuted sentences unless so stipulated in the executive order commutating the sentence. This statutory provision would seem to bolster the following reasoning in the *Meyers Case, supra,* at page 693:

"The date of expiration of plaintiff's sentence is fixed by executive order at 15 years from date of sentence. Plaintiff, if he accepts the benefit of the commutation granted, must accept it in accordance with the terms imposed by the executive authority granting it."

---

[5] CLS 1961, § 800.33 (Stat Ann 1954 Rev § 28.1403).

Since in the *Meyers Case* there was a commutation, and since plaintiff in the *Meyers Case* could not accept the commutation other than on its plain terms, the language in the *Meyers Case* to the effect that good-time allowances do not apply to life sentences was not essential to decision there.  Normally, of course, the point is moot, since no amount of good time earned can reduce a life sentence.  It simply is not possible to deduct a stated number of years from an indefinite life sentence.  And further, with respect to life sentences other than for murder in the first degree, the statute (CLS 1961, § 791.234 [Stat Ann 1965 Cum Supp § 28.2304]) provides that the parole board should have jurisdiction after 10 *calendar years*.  It is therefore the obvious legislative assumption that the question of whether or not a lifer[6] earns good time is moot.

Despite such legislative assumption, the present factual situation requires us to determine whether a lifer does in fact earn good time even though in most cases it has no practical value.

As we have seen, the good-time statute purports to give good-time credits to every convict who behaves himself in prison.

Clearly, the purpose of this enactment is to encourage good behavior by prisoners and thus generally to improve conditions in the prisons and reduce custodial costs to the taxpayers.

Presumably, the statute makes no distinction between lifers and other convicts by reason of the fact that the legislature wanted to encourage good behavior by lifers as well as by all other prisoners.

Admittedly, the good-time credit incentive is rather nebulous in the case of a convict imprisoned for life.  But since hope and postconviction pleas spring eternal within the incarcerated human breast, it cannot be said the good-time credit law is not at least some encouragement to them.  At least, it appears

---

[6] "Lifer" is a slang word meaning "convict serving a life sentence".  Since the word is simple, descriptive, inoffensive, and generally understood, cumbersome substitutes are eschewed.

that the legislature thought it would be so, and its policy determination is binding on this Court.

We hold that the petitioner, Willie B. Moore, was a "convict" within the meaning of the good-time statute during his prior incarceration under invalid sentence, and as such, he is entitled to have such allowances for good behavior as were earned by him during those years credited to him, for purposes of parole consideration.

Mandamus should issue for such purposes only.

BLACK, J., concurred in result with BRENNAN, J.